UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:19-CV-00092-GNS-HBB

SEAN HENRY                                                                                                    PLAINTIFF

v.

HORSE CAVE CITY et al.                                                                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment (DN 59). The motion is ripe for adjudication.

### I.  STATEMENT OF FACTS AND CLAIMS

Plaintiff Sean Henry ("Henry") initiated this action against Defendants City of Horse Cave, Kentucky,[1] and its mayor, Randall Curry ("Mayor Curry") (collectively, "Defendants"), after Mayor Curry fired Henry from his position as Chief of the Horse Cave Police Department ("HCPD"). (Compl. 1-2, DN 1; Defs.' Mot. Summ. J. Ex. H, DN 59-8).

On February 18, 2018, Henry, along with HCPD Officer Chris Trulock ("Trulock"), arrested a suspect in his apartment. (Henry Dep. 26:10-25, Oct. 6, 2024, DN 60). Based on what they believed to be the odor and presence of marijuana, Trulock and Henry obtained a search warrant and searched the apartment. (Trulock Dep. 37:25-39:21, Dec. 6, 2024, DN 56, *Trulock v. Horse Cave City*, 1:19-CV-00063-GNS-HBB (W.D. Ky.)). Two Kentucky State Police ("KSP") troopers, Shae Foley and Raymond Chambers, assisted in the search. (Defs.' Mot. Summ. J. Ex. A, at 1, DN 59-1). The KSP troopers believed that they observed Trulock tampering with evidence

---

[1] Defendants state that the correct name of the municipal defendant is "the City of Horse Cave," not "Horse Cave City." (Defs.' Mot. Summ. J. 1 n.1, DN 59). The Court will refer to the municipal defendant as "the City."

1

during the search. (Defs.' Mot. Summ. J. Ex. A, at 4; Chambers Dep. 82:11-83:3, Sept. 6, 2023, DN 62). They reported their observations and concerns to their KSP supervisor and the Federal Bureau of Investigation ("FBI"). (Foley Dep. 26:10-22, May 22, 2024, DN 61). The FBI searched HCPD, but no criminal charges have been brought against Henry or Trulock. (Ross Dep. 22:6-8, Feb. 8, 2024, DN 65; Nichols Dep. 40:6-24, Nov. 27, 2023, DN 63; Pl.'s Resp. Defs.' Mot. Summ. J. 4-5, DN 67). Henry maintains that he and Trulock did not do anything illegal. (Henry Dep. 29:3-21).

Henry and Trulock invoked their Fifth Amendment right against self-incrimination and did not testify at the preliminary hearing for the suspect they arrested, which led the prosecutor to dismiss the charges against the suspect. (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. 3, at 10:46:17-10:40:00 AM, DN 66; Nichols Dep. 67:18-70:6). The Hart County Attorney and the Commonwealth's Attorney informed Mayor Curry that pending and new cases involving HCPD were put on hold because of "questions regarding a criminal case filed by the Horse Cave Police Department," referencing the alleged evidence tampering. (Defs.' Mot. Summ. J. Ex. B, at 1, DN 59-2; Nichols Dep. 14:1-10). The prosecutors later indicated that they would prosecute cases from three uninvolved HCPD officers. (Defs.' Mot. Summ. J. Ex. C, at 1, DN 59-3; Defs.' Mot. Summ. J. Ex. D, at 1, DN 59-4).

Mayor Curry suspended Henry, then issued Disciplinary Charges and a Notice of Disciplinary Hearing. (Defs.' Mot. Summ. J. Ex. E, at 1, DN 59-5; Defs.' Mot. Summ. J. Ex. F, at 1, DN 59-6). Mayor Curry charged Henry with the inability to perform the essential functions of his job as police officer and police chief. (Defs.' Mot. Summ. J. Ex. F, at 2). The factual basis for the charge was: (1) the Hart County Attorney's "questions regarding a criminal case filed by the Horse Cave Police Department" and the prosecutors' decision not to move forward with HCPD

2

cases, complaints, and warrants until the questions were fully resolved; (2) the search warrant that was issued for HCPD, which covered equipment issued to Henry by HCPD and included a photograph of Henry; and (3) the letter indicating the prosecutors would prosecute criminal charges filed by three HCPD officers as long as Henry had "absolutely no involvement in the case whatsoever," Henry's inability or unwillingness to testify in support of criminal charges, and the prosecutors' decision to not pursue charges or to dismiss charges because of Henry's involvement. (Defs.' Mot. Summ. J. Ex. F, at 1).

Although Defendants did not concede that Henry was entitled to a hearing by law, a disciplinary hearing was provided. (Defs.' Mot. Summ. J. Ex. F, at 1 n.1; Defs.' Mot. Summ. J. Ex. H, at 1, DN 59-8). Henry appeared with counsel. (Defs.' Mot. Summ. J. Ex. H, at 1; Henry Dep. 46:21-47:10). Following the hearing, Mayor Curry terminated Henry's employment with HCPD because he found that Henry could not perform the duties of Police Chief. (Defs.' Mot. Summ. J. Ex. H, at 1). In his written findings, Mayor Curry stated that he was persuaded by the letters from the Hart County Attorney and the Commonwealth's Attorney stating that they would not prosecute criminal charges filed by Henry. (Defs.' Mot. Summ. J. Ex. H, at 1-2). Henry did not appeal the mayor's decision to Hart Circuit Court (Kentucky). (Henry Dep. 48:25-49:12).

Henry filed this action *pro se*,[2] asserting claims for violations of his property and liberty rights under the due process clause of the Fourteenth Amendment, as well as wrongful termination under Kentucky law. (Compl.; Henry Dep. 49:7-16). Defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56. (Defs.' Mot. Summ. J. 1).

---

[2] Henry has since retained counsel. (Notice Appearance, DN 26).

3

## II.     JURISDICTION

The Court has jurisdiction over this matter based upon federal question jurisdiction. *See* 28 U.S.C. § 1331. The Court also has supplemental jurisdiction over the state-law claim. *See* 28 U.S.C. § 1367.

## III.     STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying the evidence demonstrating an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the nonmoving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable for the nonmoving party, the nonmoving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the nonmoving party must present facts proving that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

## IV.  DISCUSSION

Defendants seek summary judgment on the basis that:  (i) Henry was an at-will employee and KRS 15.520 is inapplicable; (ii) Henry did not properly appeal his termination, so his claims are waived; (iii) Henry did not have a protected property or liberty interest, and in any event was provided with a hearing; (iv) Henry's official-capacity claim against Mayor Curry is duplicative; and (v) Henry's individual-capacity claim fails because he only points to official acts and the mayor is entitled to qualified official immunity.

### A.  Kentucky Police Officers' Bill of Rights

Defendants argue that Henry was an at-will employee because KRS 15.520 is inapplicable, which Henry disputes.[3]  (Defs.' Mot. Summ. J. 20; Pl.'s Resp. Defs.' Mot. Summ. J. 12-14).  Under Kentucky law, a mayor may terminate police officers at-will "unless otherwise provided by statute or ordinance."  KRS 83A.080(3); *Howard v. City of Indep.*, 199 S.W.3d 741, 745 (Ky. App. 2005).  KRS 15.520, colloquially known as the police officers' Bill of Rights, "limits a mayor's ability to discharge a police officer at will if grounds set out in the statute apply."  *Howard*, 199 S.W.3d at 745 (citing *City of Munfordville v. Sheldon*, 977 S.W.2d 497, 499 (Ky. 1998)).  The Court assumes, without deciding, that KRS 15.520 applies here.

---

[3] Defendants incorrectly assert that "[t]o trigger KRS 15.520, a civilian complaint must prompt the municipality's employment action."  (Defs.' Reply Mot. Summ. J. 4, DN 69).  KRS 15.520 explicitly covers accusations by "any individual within the law enforcement agency employing the officer, including supervisors and elected or appointed officials of the officer's employing agency . . . ."  KRS 15.520(4)(a); *Schell v. Young*, 640 S.W.3d 24, 41 (Ky. App. 2021) ("[T]he General Assembly subsequently enacted significant changes to the statute to make its scope plain, namely that it applies:  (1) to complaints from citizens alleging misconduct by a police officer, KRS 15.520(3); and (2) '[w]hen an officer is accused of an act or omission that would constitute a violation of law enforcement procedures by any individual within the law enforcement agency employing the officer[.]'"  (second and third alterations in original) (quoting KRS 15.520(4)(a))).

5

### B. <u>Waiver</u>

Defendants contend that Henry cannot challenge his termination now because he chose not to appeal Mayor Curry's decision under the procedures provided by KRS 15.520, thereby waiving any claim. (Defs.' Mot. Summ. J. 19). Henry concedes that he did not appeal the mayor's termination decision but argues that the hearing provided for him by KRS 15.520 does not preclude his claims based on constitutional violations. (Pl.'s Resp. Defs.' Mot. Summ. J. 8-11). Henry does not address his wrongful termination claim.

#### 1. *Procedural Due Process*

There is no general exhaustion requirement for a claim under 42 U.S.C. § 1983. *See Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 516 (1982). However, for Fourteenth Amendment procedural due process claims brought under Section 1983, the plaintiff "must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). After all, "[t]he constitutional violation actionable under [Section] 1983 is not complete when the deprivation [of a life, liberty, or property interest] occurs; it is not complete unless and until the [government] fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990). This requirement is not an exhaustion requirement; rather, this ensures that "the harm alleged has occurred." *Alvin*, 227 F.3d at 116; *Peloe v. Univ. of Cincinnati*, No. 1:14-CV-404, 2015 WL 728309, at *6 (S.D. Ohio Feb. 19, 2015). So, where there is a process available "that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." *Alvin*, 227 F.3d at 116 (citations omitted). Sister courts have specifically required plaintiffs to utilize any adequate state judicial review process before claiming a procedural due process violation. *E.g.*, *Peloe*, 2015 WL 728309, at *8 ("The disciplinary proceedings are not complete

6

and no disciplinary penalty has been imposed upon Peloe. As such, any procedural due process claim is not ripe."); *Kircher v. City of Ypsilanti*, No. 05-73425, 2008 WL 2026143, at *8 (E.D. Mich. May 9, 2008) ("Kircher acknowledges that he received a copy of this notice and admits that he did not make use of the appeals process. . . . Because Kircher had adequate post-deprivation process available to him and failed to make use of that process, his Fourteenth Amendment claim must fail.").

Because Henry did not appeal his termination decision, he cannot now claim that he was denied procedural due process. Moreover, the Sixth Circuit has held that plaintiffs are "required to plead and prove that there is no adequate state-law remedy for this deprivation before bringing a [Section] 1983 claim for damages based on a procedural due process violation." *Hill v. City of Jackson*, 751 F. App'x 772, 777 (6th Cir. 2018) (citing *Parratt v. Taylor*, 451 U.S. 527 (1981)). Henry has not done so. Thus, Defendants are entitled to summary judgment on Henry's procedural due process claims.

        2.      *Wrongful Termination*

Under Kentucky law, the elements of wrongful termination are: (i) "[t]he discharge must be contrary to a fundamental and well-defined public policy as evidenced by existing law[;]" and (ii) "[t]hat policy must be evidenced by a constitutional or statutory provision." *Foster v. Jennie Stuart Med. Ctr., Inc.*, 435 S.W.3d 629, 635 (Ky. App. 2013) (quoting *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985)). "The decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact." *Id.* (quoting *Grzyb*, 700 S.W.2d at 401). Defendants presume that Henry's wrongful termination claim is based on a public policy evidenced by KRS 15.520. (Defs.' Mot. Dismiss 19-20). Henry does not contradict this

impression nor provide any other basis for the public policy necessary for a successful claim of wrongful termination.

The Kentucky Supreme Court has held that, "[i]n the context of a wrongful discharge case, preemption occurs when the statutes that establish the 'well-defined public policy' violation which supports the wrongful discharge pleading are the same statutes that establish a statutory cause of action for, and structure the remedy for, violations of that public policy." *Hill v. Ky. Lottery Corp.*, 327 S.W.3d 412, 421 (Ky. 2010), *as modified on denial of reh'g* (Dec. 16, 2010). For example, "[a] claim of sex discrimination would not qualify as providing the necessary underpinning for a wrongful discharge suit because the same statute that enunciates the public policy prohibiting employment discrimination because of 'sex' also provides the structure for pursuing a claim for discriminatory acts in contravention of its terms." *Grzyb*, 700 S.W.2d at 401 (citation omitted). Consequently, "[t]he statute not only creates the public policy but preempts the field of its application." *Id.*

In this instance, Henry did not appeal his termination, but now brings a wrongful termination claim based on KRS 15.520. KRS 15.520, however, establishes a thorough procedure for the investigation and adjudication of complaints against police officers, detailing numerous procedural protections and rights. This includes the right to appeal the decision of the hearing authority to the appropriate Kentucky circuit court within 30 days of the date written finding are issued. KRS 15.520(8). Accordingly, under *Hill*, Henry's wrongful termination claim is precluded. *See Pearce v. Whitenack*, 440 S.W.3d 392, 399 (Ky. App. 2014) (holding that claim for wrongful discharge is precluded because the plaintiff resigned before the KRS 15.520 hearing); *Wilbers v. Off. of Att'y Gen.*, No. 2018-CA-001174-MR, 2019 WL 3375470, at *3 (Ky. App. July 26, 2019) ("Wilbers cannot repackage and rebrand his appeal as an independent cause of action in

an attempt to circumvent the time constraints imposed by KRS 15.520 . . . ."). Thus, Defendants are entitled to summary judgment on Henry's wrongful termination claim.

### C. Due Process

Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred . . . ." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). As the basis of his Section 1983 claim, Henry alleges violations of his rights under the due process clause of the Fourteenth Amendment, which provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. The due process clause has both procedural and substantive components. *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). "[S]ubstantive due process prohibits the government's abuse of power or its use for the purpose of oppression, and procedural due process prohibits arbitrary and unfair deprivations of protected life, liberty, or property interests without procedural safeguards." *Houchens v. Beshear*, 441 F. Supp. 3d 508, 516 (E.D. Ky. 2020) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1350 (6th Cir. 1996)). It is unclear whether Henry asserts procedural or substantive due process claims, or both. The Court will address each in turn.

#### 1. *Property Rights*

Henry asserts that he holds a property right in his employment as police chief. (Compl. 2). Defendants argue that Henry has no property interest in his employment, and even if did, he was provided a hearing, which he participated in with counsel. (Defs.' Mot. Summ. J. 21; Defs.' Reply Mot. Summ. J. 7-9). Henry alleges no specific facts showing that his hearing was deficient or that Defendants violated any of his rights under KRS 15.520.

To succeed on his procedural due process claims, Henry must prove three elements: (1) that he has or had a constitutionally protected life, liberty, or property interest; (2) that he was

deprived of this interest within the meaning of the due process clause; and (3) that the government did not afford him adequate procedural protections. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999); *Kircher*, 2008 WL 2026143, at *4.

It is unnecessary to decide whether Henry was deprived of a protected property interest because Defendants plainly afforded him adequate procedural protections. "Procedural due process requires notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner' if the [government] seeks to deprive someone of constitutionally protected liberty or property interests." *Hieber v. Oakland Cnty.*, 136 F.4th 308, 321 (6th Cir. 2025) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). The procedures in KRS 15.520 "go above and beyond the minimum required by due process." *Bocook v. City of Ashland*, No. 0:05-CV-00242-HRW, 2006 WL 2264965, at *5 (E.D. Ky. Aug. 8, 2006). Henry was provided with a KRS 15.520 hearing, at which he participated with counsel. This clearly constitutes "some form of pre-termination hearing" and "some opportunity . . . to present his side of the case . . . ." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985). Thus, regardless of whether Henry has a property interest in his employment, Henry has no actionable due process property claim.

Henry also asserts in his response that he has "*substantive* due process claims involving a claimed property interest in his job and liberty interest in his reputation." (Pl.'s Resp. Defs.' Mot. Summ. J. 9 (emphasis added)). Substantive due process is "[t]he doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed . . . ." *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003) (citation omitted). It protects the individual from "the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). In particular, substantive due process "protects those fundamental rights

10

and liberties which are, objectively, deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (internal citations omitted) (internal quotation marks omitted). These generally include "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, [and] to bodily integrity . . . ." *Id.* at 720 (internal citations omitted) (citation omitted).

"The Supreme Court has not included the right to maintain public employment as a substantive due process right specifically protected under the Fourteenth Amendment." *Houchens v. Beshear*, 850 F. App'x 340, 343-44 (6th Cir. 2021) (citing *Seal v. Morgan*, 229 F.3d 567, 574-75 (6th Cir. 2000)). "Absent the infringement of some 'fundamental' right, . . . the termination of public employment does not constitute a denial of substantive due process." *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1351 (6th Cir. 1992) (citation omitted). Because Henry did not allege the infringement of any fundamental right in his complaint, he cannot now frame his claims as violations of substantive due process. *See Lesinski v. City of Steubenville*, No. 2:03-CV-932, 2005 WL 1651737, at *5 (S.D. Ohio July 13, 2005) ("In this case, because Plaintiff's termination did not infringe on a fundamental right, his substantive due process claim must fail."); *Spengler v. Worthington Cylinders*, 514 F. Supp. 2d 1011, 1017 (S.D. Ohio 2007) ("[A] plaintiff may not defeat summary judgment by asserting a claim that he did not plead in the complaint." (citation omitted)). Thus, Defendants are entitled to summary judgment on Henry's Section 1983 due process property claim.

### 2. *Liberty Rights*

Henry also asserts liberty rights in his reputation and integrity. (Compl. 2). Defendants aver that this claim fails because Henry was provided with a hearing and Defendants did not accuse Henry of any illegal acts or misconduct. (Defs.' Mot. Summ. J. 22). Henry has conceded that he received a hearing and did not address Defendants' arguments. (Pl.'s Resp. Defs.' Mot. Summ. J. 6).

The Sixth Circuit has held that before asserting a protected liberty interest in reputation, good name, honor, or integrity, a plaintiff is "required to show that he requested a name-clearing hearing and was denied that hearing." *Quinn v. Shirey*, 293 F.3d 315, 319, 322 (6th Cir. 2002) (citations omitted); *Peterson v. Johnson*, 87 F.4th 833, 838 (6th Cir. 2023) (quoting *Quinn*, 293 F.3d at 319, 322). Henry did not allege that he asked for a name-clearing hearing and was denied, and, in any event, he did receive a hearing. Accordingly, Henry cannot establish a liberty interest to serve as the basis of a procedural or substantive due process claim, regardless of whether Defendants accused him of any misconduct. Thus, Defendants are entitled to summary judgment on Henry's Section 1983 due process liberty claim.[4]

---

[4] Defendants argue that the claims against Mayor Curry in his official capacity are duplicative of the claims against the City. (Defs.' Mot. Summ. J. 23-24). Henry concedes this point. (Pl.'s Resp. Defs.' Mot. Summ. J. 8 n.8). Therefore, the claims against Mayor Curry in his official capacity would be dismissed on that basis. *Thorpe ex rel. D.T. v. Breathitt Cnty. Bd. of Educ.*, 932 F. Supp. 2d 799, 802 (E.D. Ky. 2013) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." (internal quotation marks omitted) (citation omitted)); *Baar v. Jefferson Cnty. Bd. of Educ.*, 686 F. Supp. 2d 699, 704 (W.D. Ky. 2010) ("In the Eastern and Western Districts of Kentucky, however, judges have adopted the practical approach of dismissing the official capacity claims." (citations omitted)). Because the federal and state law claims fail as explained above, it is unnecessary to address any immunity defense applicable to Mayor Curry.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (DN 59) is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**. The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

September 23, 2025

cc: counsel of record

13